UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| In re:<br><br>**JOSEPH K. DARNELL,**<br><br>Debtor. | Case No. 24-10515-357<br><br>Chapter 7 |
| **BOB SUTTON REALTY & LOANS, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**JOSEPH K. DARNELL,**<br><br>Defendant. | Adv. Proc. No. 24-01008-357 |

## MEMORANDUM OPINION

Plaintiff Bob Sutton Realty & Loans, LLC ("Bob Sutton"), a creditor, commenced this adversary proceeding against Debtor Joseph K. Darnell, objecting to the Debtor's discharge under Section 727(a)(4)(A) of the Bankruptcy Code. As contemplated by Federal Rule of Civil Procedure 56(f)(3), I gave the parties notice that I was considering whether summary judgment might be appropriate on the issue of materiality of the Debtor's oaths under Section 727(a)(4)(A). Having reviewed the undisputed facts and the record of this proceeding, I will grant summary judgment in favor of the Debtor.

In response to the complaint, the Debtor filed a motion to avoid two security interests that he had granted to Bob Sutton. Because no relief is available to the Debtor in this proceeding, even if I construe the motion as a counterclaim, I will deny the motion.

I.  **Undisputed Facts**

For the purposes of summary judgment, I treat the facts set forth here as undisputed. Some are established by the record and are not subject to reasonable dispute. As to others, I adopt Bob Sutton's contentions, recognizing that the Debtor does not necessarily agree.

The Debtor was injured in the scope of his employment on February 17, 2024. He subsequently filed a workers' compensation claim in Missouri. The parties have referred to the claim with two different claim numbers, 24-010955 and 360695.

On May 10, 2024, the Debtor borrowed $1,100 from Bob Sutton, to be paid back at an interest rate of 50.1%. The Debtor later borrowed an additional $5,100 from Bob Sutton, at an interest rate of 39.18%, on August 2, 2024. Between the two loans, the Debtor was indebted to Bob Sutton in the amount of $6,200, excluding interest. The loans were each evidenced by a "Note, Disclosure, and Security Agreement." As security for the loans, the Debtor pledged a "[s]ufficient portion of the proceeds" of the workers' compensation claim related to his February 17, 2024 injury.

The Debtor filed a petition under Chapter 7 of the Bankruptcy Code on September 27, 2024. With this petition, the Debtor filed Schedule E/F, which stated that Bob Sutton had an unsecured claim of $1,500, understating the principal amount of the debt by $4,700. The Debtor disclosed an unliquidated workers' compensation claim on Schedule A/B but did not indicate on Schedule D or elsewhere that he had granted Bob Sutton security interests in the proceeds of the claim. He also did not mention any other debts owed to Bob Sutton elsewhere on his schedules.

On October 19, 2024, the Debtor filed an amended Schedule C to claim an exemption in the workers' compensation claim under Section 287.260 of the Revised Statutes of Missouri.[1] The Debtor did not otherwise amend his schedules. Neither the Trustee, Bob Sutton, nor any other party filed an objection to the Debtor's claimed exemption in the workers' compensation claim.

The Chapter 7 Trustee filed a report of no distribution and abandoned the remaining assets of the estate on October 25, 2024.

---

[1] In Schedule C, the Debtor identified the value of the claim as unknown and stated that the amount of the exemption he claimed was "$0.00." I discuss the significance of this value below.

Bob Sutton timely commenced this adversary proceeding on December 24, 2024, objecting to the Debtor's discharge pursuant to Section 727(a)(4)(A) of the Bankruptcy Code. Bob Sutton contends that the Debtor made false oaths by understating the debt and by stating that Bob Sutton was unsecured.

At a February 3, 2025 pre-trial conference, I informed the parties that I was considering whether summary judgment might be appropriate on the issue of materiality. I asked the parties to assume that all of the other elements of Section 727(a)(4)(A) have been satisfied and to discuss whether the statements in question are material. Thus, for purposes of summary judgment, I assume that the amount of the debt and the security interests claimed by Bob Sutton are valid, and that the Debtor knowingly and fraudulently made false statements about these matters in his schedules. *See, e.g., In re Thompson*, 624 B.R. 663, 669 (Bankr. W.D. Mo. 2020) (outlining elements of claim).

In response to my notice under Rule 56(f)(3), the Debtor filed a brief arguing that his statements were not material because Bob Sutton was not harmed or prejudiced by the presumed false statements. Bob Sutton did not file a response.

Along with his brief on summary-judgment issues, the Debtor filed a Motion to Avoid Lien of Bob Sutton Realty & Loans, LLC. Although the motion cites several provisions of Section 522 of the Bankruptcy Code, the Debtor's substantive argument appears to be that the liens are invalid or unenforceable as a matter of state law. In addressing the motion, I consider the facts in the light most favorable to the Debtor.

## II.  Jurisdiction

The Court has jurisdiction of this adversary proceeding, which arises under Title 11 and relates to the Debtor's bankruptcy case, under 28 U.S.C. § 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(J), and both parties have consented to my entry of a final judgment in this proceeding. I discuss jurisdictional issues specific to the Debtor's motion to avoid Bob Sutton's liens in greater detail below.

## III.  Analysis

### A.  Summary Judgment

Federal Rule of Civil Procedure 56, which sets the standard for summary judgment, applies to adversary proceedings through Federal Rule of Bankruptcy Procedure 7056. Summary judgment is appropriate if "there is no genuine dispute as to any material fact" and a party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is "no genuine issue for trial" if "the record taken as a whole could not lead a rational trier of fact" to find

for one of the parties. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (cleaned up).

1. Denial of discharge under Section 727(a)(4)(A)

A debtor filing a Chapter 7 petition is granted a discharge under Section 727(a), unless the debtor falls under one of the statutory exceptions to discharge. One such exception provides that "[t]he court shall grant the debtor a discharge, unless . . . the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." 11 U.S.C. § 727(a)(4)(A).

> To establish that the Debtor made a false oath under § 727(a)(4)(A), [the creditor] is required to prove, by a preponderance of the evidence, that: (1) the Debtor made a statement under oath; (2) the statement was false; (3) the Debtor knew the statement was false; (4) the Debtor made the statement with fraudulent intent; and (5) the statement related materially to the Debtor's bankruptcy case.

*In re Cecil*, 542 B.R. 447, 451 (B.A.P. 8th Cir. 2015).

"As denial of discharge is a harsh remedy, the provisions of § 727(a) are strictly construed in favor of the debtor." *In re Dykes*, 954 F.3d 1157, 1162 (8th Cir. 2020) (cleaned up). Although this general principle favors a debtor, the materiality element of a Section 727(a)(4)(A) claim does not. In short, the materiality bar is a low one. *See Thompson*, 624 B.R. at 675. A statement is material if it "bears a relationship to [a debtor's] business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *In re Olson*, 916 F.2d 481, 484 (8th Cir. 1990) (cleaned up).

The monetary value of an omitted asset or liability is somewhat relevant to the materiality analysis, but it is not determinative. *See id.* An omission may be material even if the omitted item would not lead to recovery for creditors. *See In re Freese*, 460 B.R. 733, 739 (B.A.P. 8th Cir. 2011). For example, the omission of a potentially exempt asset worth $1,358 is material and can result in denial of discharge under Section 727(a)(4)(A). *See Mertz v. Rott*, 955 F.2d 596, 598 (8th Cir. 1992).

"But a false statement that has no effect in the case is not grounds for denying a discharge." 6 *Collier on Bankruptcy* ¶ 727.04[1][b] (16th ed. 2025); *see also Willoughby v. Jamison*, 103 F.2d 821, 824 (8th Cir. 1939) (allowing debtor a discharge when false oath "did not hurt the objector, nor interfere with the orderly administration of the bankrupt's estate") (cleaned up); *In re Wills*, 243 B.R. 58, 63 (B.A.P. 9th Cir. 1999) ("A false statement or omission that

has no impact on a bankruptcy case is not grounds for denial of a discharge under § 727(a)(4)(A)."); *In re Tauber*, 349 B.R. 540, 564 (Bankr. N.D. Ind. 2006) (finding allegedly inaccurate statements immaterial when they "had no bearing on the outcome of these proceedings"); *In re Jeffery*, No. 16-15037, 2023 WL 3909794, at *13 (Bankr. E.D. Pa. June 8, 2023) ("The infraction must matter to the underlying bankruptcy case."); *In re Gordon*, No. 09-16230, 2015 WL 269800, at *18 (Bankr. S.D.N.Y. Jan. 13, 2015) ("A false statement that has little to no effect in the case—e.g., the misstatement is regarding property in which the estate does not have an interest, or the misstatement does not significantly affect the value of the estate or lead to the discovery of information that would affect the value of the estate—is not a ground for [denying] discharge."), *aff'd*, 535 B.R. 531 (S.D.N.Y. 2015).

2. Workers' compensation exemption under Missouri law

"The Bankruptcy Code allows debtors to exempt certain property from their bankruptcy estates, which are otherwise comprised of all the debtor's legal or equitable interests in property." *In re Abdul-Rahim*, 720 F.3d 710, 712 (8th Cir. 2013); *see also* 11 U.S.C. § 522(b)(1). Although Section 522(d) of the Bankruptcy Code provides a series of exemptions under federal law, states can "opt out" of these federal exemptions. *See In re Benn*, 491 F.3d 811, 813 (8th Cir. 2007). Missouri has opted out of the Section 522(d) exemptions, so Missouri debtors are limited to exemptions under state law or federal laws other than Section 522(d). *See Abdul-Rahim*, 720 F.3d at 712; § 513.427, RSMo.

Section 287.260.1 of the Revised Statutes of Missouri states that "compensation payable" on a workers' compensation claim "shall not be assignable, shall be exempt from attachment, garnishment, and execution, [and] shall not be subject to setoff or counterclaim, or be in any way liable for any debt." The language of Section 287.260.1 "is sufficiently broad to cover unliquidated claims for workers compensation." *In re Jackson*, 173 B.R. 168, 170 (Bankr. E.D. Mo. 1994). Although the exemption does not extend to the proceeds of a claim after they have been paid to the claimant, *see In re Logan*, 666 B.R. 801, 809 (Bankr. E.D. Mo. 2024), there is no dispute that the Debtor's claim remained unliquidated when he commenced this case. Unlike many exemptions, Section 287.260.1 does not include a dollar limitation; a debtor may exempt a workers' compensation claim in its entirety.[2]

---

[2] The Debtor's identification of the amount of the exemption as "$0.00" on Schedule C is thus puzzling, but it is ultimately irrelevant. A debtor's inaccuracy in making a claim under a dollar-limited exemption can have unfortunate consequences. *See Schwab v. Reilly*, 560 U.S. 770, 774 (2010) (trustee may sell asset and retain any value beyond amount claimed by debtor); *In re Soost*, 262 B.R. 68, 73-74 (B.A.P. 8th Cir. 2001) (same). But when an
(footnote continued)

With narrow exceptions, none of which apply here, a trustee may not use an exempt asset to pay administrative expenses of the bankruptcy estate or to pay pre-petition debts owed by a debtor. *See* 11 U.S.C. § 522(c), (k); *Law v. Siegel*, 571 U.S. 415, 422-24 (2014).

3.      Application of the law to the undisputed facts

For the purposes of summary judgment, the parties agree, or assume, that the Debtor understated the principal amount of the debts owed to Bob Sutton by $4,700. They also agree that Bob Sutton and the Debtor executed security agreements that secure the loans with proceeds of the Debtor's workers' compensation claim, but the Debtor did not list Bob Sutton as a secured creditor in his schedules. Whether the security interests are enforceable is not at issue here; I assume that they are.[3]

The Debtor exempted the workers' compensation claim from the bankruptcy estate without objection. Thus, neither the claim nor its proceeds were included in the estate, and the Trustee could not distribute those proceeds to Bob Sutton. If the Debtor had done what Bob Sutton contends he should have done—listed a claim of $6,200 and identified Bob Sutton as a secured creditor on Schedule D—that would not have changed the outcome. Bob Sutton still would have received no recovery from the bankruptcy estate.

Fundamental to this conclusion is the fact that the Debtor's case was a no-asset case, meaning that the bankruptcy estate did not have any assets that the Chapter 7 Trustee could distribute to creditors. If the bankruptcy estate had contained sufficient assets to allow the Trustee to make a distribution, perhaps the understatement of the claim would have harmed Bob Sutton. Whether that harm would qualify as material, considering that Bob Sutton would have been required to file a proof of claim under Federal Rule of Bankruptcy Procedure 3002(a) whether the schedules were accurate or inaccurate, is a question I need not decide

---

exemption statute is unlimited—*i.e.*, the asset can be exempted in kind—"the amounts claimed are irrelevant." *In re Bergman*, 663 B.R. 768, 774 (Bankr. D. Neb. 2024). Indeed, both the majority and the dissenting opinions in *Schwab* expressly recognized that in-kind exemptions are different from dollar-limited exemptions. *See Schwab*, 560 U.S. at 784 n.10, 793 n.19 (majority opinion); *id.* at 802 n.8 (Ginsburg, J., dissenting). In any event, no one would have understood the Debtor in this case to be simultaneously claiming an exemption and not claiming any exemption at all.

[3] The validity of the security interests might be relevant to other issues, such as the Debtor's intent to deceive, if this proceeding were tried. But, as stated above, I consider this fact in the light most favorable to Bob Sutton for the purposes of summary judgment.

here. In this case, where the Trustee did not pay anything to creditors, Bob Sutton was not affected at all by the Debtor's misstatement of the amount owed.

The fact that the Debtor omitted any mention of Bob Sutton's collateral also did not affect either party in any way. If the security interests are valid and enforceable, Bob Sutton may pursue its rights *in rem* after the Debtor's discharge, just as any other creditor with a lien on property abandoned by a trustee may do. *See Johnson v. Home State Bank*, 501 U.S. 78, 83-84 (1991). And, of course, if the security interests are not valid, Bob Sutton cannot enforce them. But whether the Debtor scheduled Bob Sutton as a secured creditor makes no difference.

The grounds for denial of a discharge in Section 727(a) were "included to prevent the debtor's abuse of the Bankruptcy Code." *In re Korte*, 262 B.R. 464, 471 (B.A.P. 8th Cir. 2001). In general, these grounds address systemic risks to the bankruptcy system. By contrast, when a debtor's offensive conduct has harmed only one creditor, the usual remedy is to except that creditor's debt from the discharge, while permitting the debtor to discharge other debts. *See generally* 11 U.S.C. § 523(a). Congress has not enacted a discharge exception that applies to the circumstances present here: understating the amount of a debt and listing a secured creditor as unsecured.[4] It would be remarkable if Section 727(a) authorized the denial of a debtor's discharge outright on account of conduct, affecting only a single creditor, that would not justify excepting that creditor's claim alone from the discharge under Section 523(a). It also would be inconsistent with the principle that Section 727 is strictly construed in favor of the debtor.

As noted above, Eighth Circuit decisions on the issue of materiality generally are not favorable to debtors. But they involve false oaths about assets, which affect all creditors and the functioning of the bankruptcy process more generally. *See In re Bren*, 122 F. App'x 285, 287 (8th Cir. 2005) (interest in limited-liability partnership, ownership of other tangible assets,

---

[4] The discharge exception that comes closest is in Section 523(a)(3), which may except a debt from discharge if the debtor omits the creditor from the schedules entirely and the creditor does not become aware of the case otherwise. *See* 11 U.S.C. § 523(a)(3). But even this exception would not apply here. Bob Sutton was given timely notice of the case because it was included on the creditor matrix, but in any event, there was no deadline to file a proof of claim. *See In re Baskowitz*, 194 B.R. 839, 845 (Bankr. E.D. Mo. 1996) ("In a case where no assets are available, and there has been no deadline set for creditors to file proofs of claim, Section 523(a)(3)(A) does not render the unscheduled debt non-dischargeable because there is not yet a time when it is too late to permit a timely filing of a proof of claim."); *In re Lovett*, No. 24-40412, 2024 WL 2305788, at *1 (Bankr. E.D. Mo. May 21, 2024).

and transfers of other property prior to bankruptcy); *Mertz*, 955 F.2d at 598 (asset worth $1,358); *Olson*, 916 F.2d at 484 (asset of questionable value); *cf. Willoughby*, 103 F.2d at 824 (concluding, under prior law, that debtor's misstatement about source of funds used by spouse to purchase property was not material; essential facts were that debtor had no interest in property and did not supply funds). Whether a liability is described accurately, however, usually is of concern to only one creditor. Unless the materiality element of a Section 727(a)(4)(A) claim is to play an immaterial role in distinguishing behavior that justifies denial of a discharge from behavior that does not, it should not sweep in minor misstatements that concern the claim of a creditor but do not adversely affect that creditor.[5]

For these reasons, I conclude that even if the Debtor knowingly and fraudulently understated his liability to Bob Sutton, the statements were not material, and his discharge should not be denied.

### B.  Debtor's Motion to Avoid Liens

Because I am resolving the only claim in this adversary proceeding by summary judgment, I could deny the Debtor's motion seeking to avoid Bob Sutton's liens as moot. On the other hand, the Debtor may have intended to pursue the relief requested in the motion as a counterclaim. If so, it is appropriate to consider whether such a counterclaim would state a claim on which relief could be granted in this proceeding. For the following reasons, I conclude that it would not.

The motion turns on the Debtor's exemption of the workers' compensation claim, and he cites Section 522 of the Bankruptcy Code, so I will first consider potential theories of relief under that statute. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848-49 (8th Cir. 2014) (court must consider legal theory advanced by claimant and other possible theories of recovery).

Section 522(f)(1)(A) permits a debtor to avoid a "judicial lien" that impairs an exemption. 11 U.S.C. § 522(f)(1)(A). The Bankruptcy Code defines that term as a "lien

---

[5] Among the many things that I am *not* saying here, two are worth highlighting. First, I am not suggesting that there is no remedy for intentionally misstating the amount owed to a creditor; I am merely concluding that denial of discharge is not the appropriate remedy here. And second, I am not saying that all misbehavior regarding Schedules D, E, and F is equivalent. For example, a debtor who states that a creditor is secured when the creditor is not effectively represents to the trustee that the supposedly encumbered asset is not available for unsecured creditors; that is much more of a systemic concern than the understatement of a claim.

obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." *Id.* § 101(36). Because the liens at issue here were "created by an agreement," not by judicial proceedings, they are "security interest[s]" and not judicial liens. *Id.* § 101(51).

A debtor may avoid certain security interests under Section 522(f)(1)(B). But that section limits relief to "nonpossessory, nonpurchase-money" security interests in household goods, tools of the trade, professionally prescribed health aids, and related types of tangible personal property. *See id.* § 522(f)(1)(B), (f)(4). It does not permit a debtor to avoid a security interest in a cause of action or the cash proceeds of a cause of action.

Finally, Section 522(h) authorizes a debtor to exercise, with respect to exempt assets, some of the avoiding powers that ordinarily are vested in the Chapter 7 trustee. *See id.* § 522(h). Thus, if the Trustee might have avoided the transfer of the security interests to Bob Sutton but elected not to pursue that claim—because whether an exempt asset is encumbered or not is irrelevant to the bankruptcy estate—Section 522(h) might permit the Debtor to seek avoidance of the transfer for his own benefit. But Section 522(h) is subject to an important limitation found in Section 522(g)(1): "such transfer was not a voluntary transfer of such property by the debtor." *Id.* § 522(g)(1). The Debtor voluntarily granted the security interests at issue, and so Section 522(g)(1) precludes him from obtaining relief under Section 522(h).[6]

The Debtor's motion also appears to advance an argument under state law: even if he granted security interests to Bob Sutton and received loans in return, the security interests are void or unenforceable because "compensation payable" under the workers' compensation law "shall not be assignable." § 287.260.1, RSMo. But unlike the theories of recovery under Section 522 discussed above, the Debtor's state-law claim does not arise under Title 11, arise in a Title 11 case, or relate to the Debtor's bankruptcy case. *See* 28 U.S.C. § 1334(b); *In re Farmland Industries, Inc.*, 567 F.3d 1010, 1018 (8th Cir. 2009) ("arising in" proceedings, by their nature, could exist only in a bankruptcy case); *Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d 770, 774 (8th Cir. 1995) ("related to" proceedings must have some conceivable effect

---

[6] In earlier times, the term "voluntary conveyance" referred to a transfer made for no or only nominal consideration. *See, e.g., McKeown v. Allen*, 20 So. 556, 558 (Fla. 1896). This phrase was still in use in certain jurisdictions around the time of the enactment of the Bankruptcy Code. *See Mercantile National Bank v. Aldridge*, 210 S.E.2d 791, 794 (Ga. 1974). Nevertheless, "voluntary" in Section 522(g)(1) bears the contemporary meaning of "consensual." *See, e.g., In re Harris*, 886 F.2d 1011, 1015 (8th Cir. 1989) (discussing case in which deposit of funds in bank account was treated as voluntary); 4 *Collier on Bankruptcy* ¶ 522.12[2][b] (16th ed. 2025) ("[I]n most instances, the granting of a mortgage or security interest in the debtor's property is voluntary.").

on bankruptcy estate). I thus would not have subject-matter jurisdiction to resolve the Debtor's state-law claim if it were presented in a freestanding adversary proceeding. *See* Fed. R. Bankr. P. 7001(b) (governing "a proceeding to determine the validity, priority, or extent of a lien").

There is no controlling authority on the question whether the bankruptcy courts may exercise supplemental jurisdiction under 28 U.S.C. § 1367, although several judges in the Eighth Circuit have opined that they cannot. *See In re Valley Food Services, LLC*, 400 B.R. 724, 728 (Bankr. W.D. Mo. 2008); *In re Moffitt*, 406 B.R. 825, 829 (Bankr. E.D. Ark. 2009). I need not wade into this debate, because even if I had supplemental jurisdiction over the Debtor's claim, I would decline to exercise it. *See generally Hunter v. Page County*, 102 F.4th 853, 870 (8th Cir. 2024) (discussing four-factor test for decision to exercise supplemental jurisdiction). Among other things, I have dismissed all claims over which I have original jurisdiction; only state-law claims remain; and the Debtor's claim appears to present a novel and complex issue of state law. In particular, although the Debtor characterizes Bob Sutton as taking a security interest in a cause of action that is not assignable, the loan documents limit the security interest to the proceeds of the cause of action, and the proceeds will not be exempt after the Debtor receives them. *See Logan*, 666 B.R. at 809; *SSM Health Care System v. Bartel*, 914 S.W.2d 8, 10 (Mo. Ct. App. E.D. 1995). I am skeptical that this sort of end-run around the broad anti-assignment language of Section 287.260 is permissible, but I am not aware of any precedents addressing the issue. Given the lack of any nexus to the bankruptcy estate, it makes sense to permit the state courts to address this question. *See generally Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 483 (1940) (abstention may be appropriate as to unsettled questions of state property law).

Thus, to the extent that the Debtor's motion is not mooted by the resolution of the principal claim in this adversary proceeding, I will deny it.

### IV.   Conclusion

For these reasons, the Debtor is entitled to summary judgment on Bob Sutton's claim under Section 727(a)(4)(A) of the Bankruptcy Code, but I will deny the Debtor's motion to avoid Bob Sutton's liens. Judgment will be entered separately.

Dated:  April 21, 2025
St. Louis, Missouri
cjs

Brian C. Walsh
United States Bankruptcy Judge

Serve:

**Bob Sutton Realty & Loans, LLC**
50 Highway 142
Poplar Bluff, MO 63901

**Anna Elizabeth Iman**
Kennedy, Robbins, Yarbro & Henson, LC
1165 Cherry St.
P.O. Box 696
Poplar Bluff, MO 63901

**Joseph K Darnell**
201 Cobblestone Lane
Steele, MO 63877

**Inga Hilfiker Ladd**
Hilfiker Law Firm
301 W. Main
P. O. Box 359
Malden, MO 63863